IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIAM M.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:20cv00067 |
| | ) |
| KILOLO KIJAKAZI,[2] | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**REPORT AND RECOMMENDATION**

Plaintiff William M. ("William") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for a period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 42 U.S.C. § 1381-1383f. William alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) determine his RFC and perform a function-by function analysis; (2) evaluate the opinion of the consultative examiner; (3) assess his mental impairments; and (4) assess his allegations regarding his symptoms.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 10) and **DENYING** William's Motion for Summary Judgment (Dkt. 14).

**STANDARD OF REVIEW**

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that William failed to demonstrate that he was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." Biestek, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

William filed for SSI in December 2015, claiming his disability began on January 1, 2003, due to emergency gastric bypass to remove two masses, migraine, potential toe amputation, septoplasty implant in nose, decreased appetite, neck and related back and waist

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

pain, numbness in lower extremities, bipolar disorder, post-traumatic stress disorder, and depression.[4] R. 42, 100, 225–26, 252–62. The state agency denied William's applications at the initial and reconsideration levels of administrative review. R. 99–102. On May 30, 2018, ALJ Mary Peltzer held a hearing to consider William's claims for DIB and SSI. R. 37–74. Counsel represented William at the hearing, which included testimony from vocational expert Mary Pierce. R. 37. The ALJ noted that William filed prior SSI and DIB claims in November 2007. R. 18. The ALJ declined to reopen that determination and dismissed William's DIB claim. R. 18, 30, 42. William raised no argument at the hearing or in his brief challenging this decision. On November 18, 2018, the ALJ entered her decision analyzing William's claims under the familiar five-step process[5] and denying his claims for benefits. R. 18–30.

The ALJ found that William was insured at the time of the alleged disability onset and that he suffered from the severe impairments of degenerative disc disease, changes in the cervical spine, obesity, and mental disorders including post-traumatic stress disorder, generalized anxiety disorder, bipolar disorder, and depressive disorder. R. 21. The ALJ determined that these

---

[4] William also filed for Disability Insurance Benefits ("DIB") in December 2015. William's alleged onset date is January 1, 2003 and his date last insured was March 31, 2005. The ALJ dismissed the DIB claim without objection from William, finding that "[t]he claimant's prior Title II application was denied in a determination dated May 27, 2008. There are no grounds to reopen the prior determination. Therefore, the claimant cannot establish disability prior to March 31, 2005, and his current Title II application is dismissed." R. 19. Elsewhere in the opinion, the ALJ misstates William's alleged disability onset date as March 31, 2005 instead of January 1, 2003. R. 18. The ALJ's error is harmless. Here, the ALJ addresses the period beginning since the SSI application date, December 2015, which is appropriate given that the relevant period for SSI claims runs from the application date through the date of the ALJ's decision. See Gray v. Berryhill, No. 6:16–cv–9, 2017 WL 4296636, at *2 (W.D. Va. Aug. 8, 2017).

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

impairments, either individually or in combination did not meet or medically equal a listed impairment.[6] R. 22. The ALJ specifically considered listing 1.04 (disorders of the spine), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma and stressor related disorders). R. 22–23. The ALJ also considered Social Security Ruling 02-1p. Soc. Sec. Ruling 02-1p Titles II & Xvi: Evaluation of Obesity,[7] SSR 02-1p, 2002 WL 34686281 (S.S.A. Sept. 12, 2002). Id. The ALJ found that regarding his mental impairments, William had a moderate limitation in concentrating, persisting, or maintaining pace and mild limitations in understanding, remembering, or applying information, interacting with others, and adapting or managing oneself. R. 23.

The ALJ concluded that William retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 24. Specifically, William can stand and walk up to four hours per day. Id. He can occasionally use ramps and stairs, but cannot use ladders, ropes or scaffolds. Id. William can frequently balance, kneel, and crouch, but can only occasionally stoop or crawl, and he cannot reach overhead with his left upper extremity. Id. He can have frequent exposure to respiratory irritants, occasional exposure to vibration and workplace hazards including dangerous moving machinery, but he cannot be exposed to unprotected heights. Id. William can perform simple, routine tasks with ordinary breaks that involve simple instructions, no more than simple work-related decisions, and that do not involve work where the pace of

---

[6] The ALJ found that William's hepatitis C, hypertension, cocaine abuse, abdominal pain related from his cholecystectomy, post-traumatic headaches, methicillin-resistant staphylococcus aureus (MRSA), kidney stones, rectal bleeding, peripheral neuropathy, and diabetes did not constitute severe impairments. R. 21–22. The ALJ found that these conditions either did not persist for twelve months or caused no more than a minimal functional limitation. Id.

[7] In May 2019, the Social Security Administration rescinded and replaced SSR 02-1p with SSR 19-2p. Soc. Sec. Ruling 19-2 Titles II and Xvi: Evaluating Cases Involving Obesity, SSR 19-2p, 2019 WL 2374244 (S.S.A. May 20, 2019). The ALJ issued the decision in this case in November 2018, before the new rule. The old rules contained in SSR 02-1p therefore apply. See Williams v. Saul, No. 1:19-cv-983, 2020 WL 5802707, at *5 n.2 (E.D. Va. Sept. 29, 2020).

productivity is dictated by an external source over which he has no control. Id. The ALJ determined that William had no past relevant work, but he could perform jobs that exist in significant numbers in the national economy, such as marker, photocopy machine operator, and router. R. 29. Thus, the ALJ determined that William was not disabled. R. 30. William appealed the ALJ's decision and the Appeals Council denied his request for review on December 3, 2019. R. 1–4.

## ANALYSIS

William alleges that the ALJ failed to properly determine his RFC and perform a function-by function analysis, evaluate the opinion of the consultative examiner, assess his mental impairments, and assess his allegations regarding his symptoms.

**A. Medical History Overview**

1. Medical Treatment

William was injured in a motorcycle accident on June 11, 2014, and he was treated at the emergency room. R. 346. Treatment notes indicated no acute traumatic injuries, though the treating physician noted minimal degenerative disc disease. R. 456. William next reported to the emergency room on March 4, 2015, for intermittent abdominal pain. R. 441. The treating physician diagnosed William with acute cholecystitis and performed a laparoscopic cholecystectomy (gallbladder removal). R. 443, 450.

William was incarcerated for approximately seven months in 2017. R. 48. On January 24, 2017, while incarcerated, William was brought from jail to the emergency room for chest pain around the time he was detoxing from cocaine and other substances. R. 701. His treating physician noted that the pain was not heart related and did not recommend further cardiac work-up. William was diagnosed with acute costochondritis (inflammation of the cartilage in the rib cage) and his pain was managed with morphine and fentanyl. R. 706. Other medical records from

the jail were generally unremarkable, noting that William was stable and had fair control of his Hepatitis C. See, e.g., R. 742.

On January 25, 2018, William established care for his Hepatitis C with Minal Patel, P.A. R. 767–71. Ms. Patel noted that William's Hepatitis C had been asymptomatic. R. 769. She also noted that William reported an increase in right upper quadrant pain and fatigue. Id. He next reported to Abhishek Shenoy, M.D., on May 7, 2018 for treatment of his Hepatitis C. R. 787. William reported that he experienced nausea, vomiting, chronic fatigue, unintended weight loss, and fevers over the past three months. R. 785. Dr. Shenoy recommended William begin taking medication for his Hepatitis C. R. 787. Dr. Shenoy referred William for an ultrasound. R. 806. The ultrasound showed slightly increased hepatic echotexture. Id.

    2. Mental Treatment

William had an initial psychiatric evaluation with Jeanette Schoonmaker, M.D., on June 18, 2015. Dr. Schoonmaker diagnosed William with bipolar disorder and post-traumatic stress disorder and prescribed trazodone and Seroquel. R. 433. Dr. Schoonmaker noted that though William was hypertalkative, his mental status was largely within normal limits. R. 432 (reporting normal mood, judgment, and attention and concentration). William was discharged on November 12, 2015 for failure to attend outpatient therapy due to incarceration. R. 430.

William established services with Laura Chasson, QMHP-A, on January 25, 2016. R. 427. Ms. Chasson diagnosed William with bipolar disorder and post-traumatic stress disorder. R. 428. She noted William was excitable and that he reported anxiety, irritability, sadness, anger, increased sleep, and drowsiness due to his medication. Id. William then attended several appointments with Dr. Schoonmaker. R. 580, 583, 587. At these appointments, Dr. Schoonmaker noted that he was hyper, but otherwise suggested a largely normal mental status. R. 579–80, 583–84. William suggested his medication regimen was effective. R. 679, 583, 587.

During William's incarceration, he refused his medications. R. 691–96. Neal Musselman, D.O., performed several mental status exams during William's incarceration. Dr. Musselman diagnosed William with post-traumatic stress disorder and chronic generalized anxiety disorder. R. 746. Dr. Musselman noted some anxiety and agitation, but otherwise found William's mental status to be appropriate. R. 748–49.

William resumed care with Ms. Chasson and Dr. Schoonmaker after his release from jail. R. 774. Ms. Chasson indicated that William's medications were effective and that he had no side effects. Id. At his February 2018 appointment, Ms. Chasson noted some hyperactivity. R. 777. At a May 2018 appointment, the attending nurse practitioner noted that William displayed poor mood, but otherwise had normal thought content, judgment, orientation, and attention and concentration. R. 780. She further noted that William reported stomach aches from his medication and changed the dosages of his medications. R. 782.

3. Medical Opinions

In December 2016, William Humphries, M.D., performed a consultative examination. R. 612–15. Dr. Humphries concluded that William would be limited to sitting six hours and standing and walking two hours in an eight-hour day. R. 615. Dr. Humphries further found that William would be limited to lifting twenty pounds occasionally and ten pounds frequently and that he should engage in only limited to occasional climbing, kneeling, and crawling. Id. He noted that William should avoid heights, hazards, and fumes. Id. Dr. Humphries conducted a physical exam where he found that tenderness in William's back, joints, and abdomen and some indication of heel and toe discomfort. R. 614–15. He diagnosed William with post-traumatic pain in his foot, post-surgical abdominal pain, history of Hepatitis C, post-traumatic lumbar strain, neuropathy in William's left lower extremity, chronic bronchitis, and mild degenerative joint disease. R. 615. He noted no specific issues with William's mental condition, but he diagnosed

7

William with post-traumatic headaches. Id. The ALJ gave Dr. Humphries' opinion partial weight.[8]

State agency physician R.S. Kadian, M.D., reviewed the record in June 2016 and found William capable of medium work with certain postural and exertional limitations but no environmental limitations. R. 93–94. Specifically, Dr. Kadian found William would be capable of standing and sitting for six hours in an eight-hour workday. R. 93. The ALJ gave Dr. Kadian's opinion significant weight. R. 28. State agency psychologist Alan Entin, Ph.D., also reviewed the record in June 2016 and noted a number of mental limitations. R. 94–96. On reconsideration in December 2016, Jack Hutcheson, M.D., found William capable of work, finding he could stand for four hours and sit for six hours in an eight-hour workday. R. 123. Dr. Hutcheson found that William would have certain postural, exertional, and environmental limitations. R. 123–24. The ALJ gave Dr. Hutcheson's opinion greater weight. R. 28. Upon reconsideration, Joseph Leizer, M.D., found similar mental limitations as Dr. Entin, but noted that William "is able to understand and remember short and simple job instructions" and that he "is able to concentrate and persist at simple job duties, sustain ordinary routines and schedules, make simple decisions, work around others and meet simple production requirements." R. 126. The ALJ gave Dr. Leizer's opinion greater weight. R. 28.

### B. Physical RFC and Function-by-Function Analysis

William argues that the ALJ's RFC findings are not supported by substantial evidence, specifically regarding "whether [his] impairments would result in [his] need to lie down during the day or cause him to need breaks outside the normal work breaks provided by employers." Pl.'s Br. at 16, Dkt. 15. William does not point to any specific records to support a need for

---

[8] The ALJ gave Dr. Humphries' opinion "significant weight" as it was consistent with his 2016 examination, but "partial weight" overall given subsequent treatment records.

8

additional breaks and his argument amounts to a disagreement with the ALJ's RFC determination.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here the ALJ's decision includes the narrative discussion required by SSR 96–8P and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include an analysis of William's medical records, the medical opinions, William's hearing testimony, and the ALJ's conclusions.

William contends that the ALJ failed to consider whether he would need to lie down or take extra breaks, but he cites no specific medical record or other evidence to support his claim that he needed these accommodations. Here, the ALJ sufficiently supported the RFC, noting throughout the opinion that despite William's subjective complaints, the medical records generally demonstrate conservative treatment and mild objective findings. R. 27. The ALJ specifically discussed several appointments where William complained of pain, but otherwise noted that his treating providers often noted unremarkable physical exams and non-debilitating pain. R. 25–27; see, e.g., R. 742 (reporting only intermittent pain); R. 760–66 (describing William's physical status as normal).

Further, as to his mental condition, the ALJ noted that William's symptoms were largely controlled by his medications. R. 27. The ALJ cited at least one appointment where William reported no negative side effects. Id. The ALJ also relied on Dr. Leizer, the state agency examiner, who found that despite limitations in concentration, persistence, or pace that William would be able to "sustain ordinary routines and schedules." R. 126.

Moreover, the ALJ is not required to make specific findings related to each of William's subjective assertions. See Shinaberry v. Saul, No. 18-2096, 2020 WL 908887, at *6 (4th Cir. Feb. 26, 2020), (ALJ did not err in refusing to fully credit claimant's subjective statements regarding her physical limitations where claimant pointed to no medical evidence in support of a

10

limitation.). The ALJ was only required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in her discussion of the medical and non-medical evidence, William's alleged symptoms, and the medical opinions of record. The ALJ considered William's complaints and explained why the evidence did not support greater RFC restrictions. This narrative discussion allows this court to see how the evidence in the record—both medical and nonmedical—supports the ALJ's RFC determination. Because I was not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

### C. Consultative Examiner's Opinion

William contends that the ALJ did not adequately explain why she did not adopt the consultative examiner's opinion regarding William's exertional and environmental limitations.[9] Pl.'s Br. at 14–16, Dkt. 15. The regulations require an ALJ to evaluate a one-time examiner, such as consultative examiner Dr. Humphries, using the factors outlined in the regulations, and to expressly indicate and explain the weight he or she accords to such opinions. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

Admittedly, the ALJ only briefly analyzed Dr. Humphries' conclusion that William "should avoid heights, hazards, and fumes." R. 27. William asserts that the RFC "cannot be accounted for by her assertion that subsequent evidence with respect to musculoskeletal impairment supports only partial weight." Pl.'s Br. at 16, Dkt. 15. While William correctly notes

---

[9] William additionally references the ALJ's failure to list chronic bronchitis or peripheral neuropathy as severe impairments. Pl.'s Br. at 16, Dkt. 15. William provides no argument or analysis on this point. Nevertheless, the ALJ specifically found that William's peripheral neuropathy was "not supported by the longitudinal treatment records." R. 22. The ALJ does not specify why William's chronic bronchitis is non-severe, however, this does not constitute reversible error. Social security regulations require an ALJ to consider the effects of both severe and non-severe impairments in steps three through five. See 20 C.F.R. § 404.1523. Moreover, the ALJ specifically considered that William had normal respiratory system and William did not raise any specific complaints of chronic bronchitis in his hearing testimony.

11

that the ALJ did not discuss environmental limitations in her review of Dr. Humphries' opinion, William fails to consider the ALJ's analysis as a whole, as well as her consideration of the other medical opinions. The decision, when read in its entirety, sufficiently addresses why the RFC did not contain greater environmental limitations, specifically related to workplace hazards and fumes.[10] Generally, the ALJ highlighted that William had conservative physical treatment, largely benign physical examination results, and that his mental condition is effectively managed with medication. R. 25–27. More specifically, the ALJ considered William's respiratory ability, citing at least one appointment where William had normal "respiratory effort and breath sounds." R. 27. She also noted that William did not raise any specific complaints of chronic bronchitis in his hearing testimony.

The ALJ also gave greater weight to Dr. Hutcheson's opinion, noting that his opinion better accounted for William's subjective complaints. R. 28. While the ALJ did not single out Dr. Hutcheson's findings regarding environmental limitations, his opinion, nevertheless, supports the ALJ's analysis. See Haught v. Colvin, No. 2:15–cv–99, 2017 WL 417201, at *6 (N.D.W. Va. Jan. 31, 2017) ("[T]he ALJ need not comment on every piece of evidence presented."). Specifically, Dr. Hutcheson noted that William was able to ambulate without an assistive device and that, despite a diagnosis of chronic bronchitis, William "displays grossly normal respiratory exams throughout [the] record." R. 124. Dr. Hutcheson concluded that William should "avoid concentrated exposure" from workplace hazards and fumes, which comports with the ALJ's RFC, which restricts William to "no more than frequent exposure to respiratory irritants" and only "occasional exposure to workplace hazards." Id.; R. 24.

Furthermore, even if the ALJ erred in her analysis, such error was harmless. William raises no specific evidence—either objective or subjective—to support a need for greater

---

[10] The ALJ's RFC adopted a total restriction on heights. R. 24.

environmental limitations than included in the RFC. See Raley v. Astrue, No. 2:11–cv–555, 2012 WL 2368609, at *5 (M.D. Ala. June 21, 2012) (finding RFC determination was appropriate when no evidence in the record supported Plaintiff's alleged environmental limitations); Sims v. Berryhill, No. 3:14–cv–576, 2017 WL 1196542, at *4 (M.D. Tenn. Mar. 31, 2017) (ALJ is only required to make a function-by-function assessment for those capacities for which a claimant alleges limitations). Moreover, SSR 83–14 suggests that many environmental restrictions do not significantly affect the potential unskilled light occupational base. See Titles II & Xvi: Capability to Do Other Work, SSR 83–14 (S.S.A. Jan. 1, 1983); see also Smith v. Astrue, No. 1:10–cv–163, 2011 WL 3922465, at *5 (N.D. Ind. 2011) (ALJ's failure to include a restriction for environmental limitations is harmless error is identified jobs do not have environmental factors).

  William additionally argues that the ALJ failed to properly explain why she did not adopt Dr. Humphries' conclusion that William was limited to standing and walking for two hours in an eight-hour workday. The ALJ provided sufficient explanation, noting that while Dr. Humphries' examination was internally consistent with his conclusion, that "subsequent treatment records document limited evidence of musculoskeletal impairment." R. 27–28. Elsewhere in her decision, the ALJ noted unremarkable physical exams despite William's complaints of pain. R. 26–27, 760–66, 770, 787. The ALJ also cited several examinations where William's musculoskeletal examination revealed a normal range of motion. See R. 27, 635, 787. The Fourth Circuit is clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Hart v. Colvin, No. 5:16–cv–32, 2016 WL 8943299, at *3 (N.D.W. Va. Sept. 14, 2016) (quoting Walls v. Barnhart, 296 F. 3d 287, 290 (4th Cir. 2002)). William's arguments amount to a request that the Court reweigh the evidence, which I am not permitted to do. The issue before me is whether the ALJ applied correct legal standards and his

factual findings are supported by substantial evidence. Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012).

### D. Mental Impairments Under SSR 96–8P

William argues that the ALJ failed to properly assess his mental impairments as required by SSR 96–8P. See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96–8P (S.S.A. July 2, 1996). Specifically, William asserts that the ALJ failed to properly consider his moderate limitations in concentration, persistence, or pace by "only address[ing] the skill of work and . . . not [William's] ability to sustain work activity over the course of an eight-hour workday." Pl.'s Br. at 18, Dkt. 15.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform

14

simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

This is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence, or pace without further analysis. Unlike the claimant in Mascio, the medical evidence here supports the ALJ's conclusion that, despite his moderate limitations in concentration, persistence, or pace, William can perform the basic mental demands of light work, with the specified accommodations. Further, here, the ALJ explained why William's moderate limitations in concentration, persistence, or pace, did not translate into a limitation in the RFC beyond "simple, routine tasks with ordinary breaks, simple instructions, no more than simple, work-related decisions, and no work where the pace of productivity is dictated by an external source over which he has no control." R. 24.

15

As a preliminary matter, William's arguments regarding his ability to sustain work amount to no more than a disagreement with the ALJ's RFC and a request that the court re-weigh the evidence. William does not specifically identify any treatment records, medical evidence, or subjective evidence to support his claim that he is unable to sustain activity over an eight-hour day. See Pl.'s Br. 17–22, Dkt. 15; see also Everett v. Berryhill, No. 3:19–cv–246, 2020 WL 6567141, at *3 (W.D.N.C. Nov. 9, 2020) ("Absent [p]laintiff pointing to conflicting evidence suggesting she is more limited than the ALJ concluded, the [c]ourt sees no reason to find that substantial evidence does not support the ALJ's two-hour limitation."); Allen v. Berryhill, No. 3:16–cv–00851, 2018 WL 1175231, at *5 (W.D.N.C. Mar. 6, 2018) (concluding the RFC assessment directly addressed the claimant's limitations, and no further explanation was required where the claimant presented no evidence supporting a greater limitation).

Moreover, contrary to William's argument, the ALJ adequately supported his finding that William could sustain his simple, routine tasks over a normal workday, and accounted for William's moderate impairments in his hypothetical questions to the vocational expert[11] and the RFC finding in his ruling. While the ALJ acknowledged that William's "mental impairments can reasonably be expected to limit his concentration, persistence, and pace," he concluded that his moderate limitations would not prevent William from working. R. 23, 27. The ALJ noted that, despite William's mental condition, his medical records indicate that he received conservative treatment that largely controlled his psychiatric symptoms. R. 26, 774 ("William states that his medications are effective and denies having any negative side effects."). Additionally, the ALJ emphasized that William's treating physicians often reported that his attention and concentration

---

[11] The ALJ is not required to pose hypothetical questions to the vocational expert relating to impairments not supported by the record. See Fisher v. Barnhart, 181 Fed. App'x 359, 364 (4th Cir. 2006) (citing Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005)) ("[A] hypothetical question is unimpeachable if it 'adequately reflect[s]' a residual functional capacity for which the ALJ had sufficient evidence."); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (stating vocational expert's opinion must be in response to hypothetical questions that "fairly set out all of claimant's impairments").

were intact. R. 23; see, e.g., R. 580, 584, 589 ("Attended to interview without evidence of impairment: responded to inquiry with appropriate responses, concentration appeared intact"); R. 751–53. The ALJ also acknowledged William's subjective allegations of pain, but she similarly noted that he received largely conservative treatment and found that the objective medical evidence suggested William could perform a limited range of light work. She additionally cited several instances where William suggested that his pain was not debilitating. See R. 742, 770, 787.

The ALJ also relied on the medical opinion evidence. The ALJ gave partial weight to Dr. Humphries, who suggested no mental limitations in his functional capacity assessment and, otherwise, found that William had a normal mental status. R. 614–15 (finding "[t]hought content, memory and intelligence" within normal limits). The ALJ gave greater weight to Dr. Leizer, who noted that William was not significantly limited in either "the ability to sustain an ordinary routine without special supervision" or "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." R. 126. Dr. Leizer's narrative also specifically supported the ALJ's RFC, suggesting that William would be "able to concentrate and persist at simple job duties, sustain ordinary routines and schedules, make simple decisions, work around others and meet simple production requirements." Id.

Here, the ALJ's reasoning rests on the medical opinions and consideration of the record evidence. This court is not "left to guess about how the ALJ arrived at [her] conclusions." Mascio, 780 F.3d at 637. As such, I conclude that substantial evidence supports the ALJ's conclusions regarding William's RFC.

### E. Subjective Allegations

17

William argues that the ALJ's assessment of his allegations is not supported by substantial evidence. Specifically, William complains that "[t]he ALJ's conclusion that medications control [William's] symptoms is not supported by substantial evidence." Pl.'s Br. at 23–25, Dkt. 15.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.  Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

The ALJ's opinion includes a discussion of William's medical history, along with William's own allegations, and the ALJ adequately supported his finding that William's allegations were not entirely consistent with the medical evidence and other evidence in the record. R. 25–28. The ALJ acknowledged William's testimony, GAF scores, and she specifically cited recent treatment notes suggesting that William was anxious and had tangential speech. R. 28, 787.

Nevertheless, the ALJ addressed the effects of William's psychiatric medications, stating that treatment notes often indicated that William's mood was good on his medications. See R. 579, 587, 591–92, 774. These reports often indicated that William denied having any side effects and reported that his medication was effective. See R. 587, 774. William's allegations are also inconsistent with the conclusions of the state agency doctors and the consultative examiner. R. 27–28, 612–15. The consultative examiner found William's mental status normal. R. 613. The state agency doctors both found moderate limitations in concentration, persistence, and pace, but otherwise found that William could perform work with simple directions. R. 124–26.

William does not identify any subjective complaints that the ALJ failed to consider. Nor does William identify specific instances in this case whether the ALJ improperly applied the legal standards. Rather, William asks this court to re-evaluate his subjective allegations and come to a different conclusion from that of the ALJ. That is not the standard of a social security appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment and **DENYING** William's Motion for Summary Judgment.

The Clerk is directed to transmit the record in this case to James P. Jones, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well

as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

                                      Entered: August 5, 2021

                                      *Robert S. Ballou*

                                      Robert S. Ballou
                                      United States Magistrate Judge